UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA
CIVIL MINUTES—
GENERAL

| | | | |
|---|---|---|---|
| Case No. | 5:25-cv-02295-SSS-AJR | Date | March 17, 2026 |
| Title | *Serzhik Avassapian v. Warden et al.* | | |

| | |
|---|---|
| Present: The Honorable | SUNSHINE S. SYKES, UNITED STATES DISTRICT JUDGE |

| Irene Vazquez | Not Reported |
|---|---|
| Deputy Clerk | Court Reporter |

| Attorney(s) Present for Plaintiff(s): | Attorney(s) Present for Defendant(s): |
|---|---|
| None Present | None Present |

**Proceedings:    (IN CHAMBERS) ORDER GRANTING EX PARTE APPLICATION FOR A TEMPORARY RESTRAINING ORDER [DKT. NO. 11]**

Before the Court is Petitioner Serzhik Avassapian's Ex Parte Application for a Temporary Restraining Order.  [Dkt. No. 11, "Application" or "App."].  Respondents filed a Response on March 13, 2026, indicating their non-opposition to Petitioner's Application.  [Dkt. No. 12].  Having considered the parties' arguments, relevant legal authority, and record in this case, the Court **GRANTS** the Application for a Temporary Restraining Order.

## I.    BACKGROUND

Petitioner, a native and citizen of Iran, has resided in the United States since approximately 2007 under an Order of Supervision following a final order of removal.  [App. at 9].  During that time, Petitioner married a U.S. citizen, maintained employment, paid taxes, and complied with all reporting requirements associated with his supervision.  [*Id.*].  On July 24, 2025, Immigration and Customs Enforcement ("ICE") took Petitioner into custody during a scheduled check-in.  [*Id.*].  Petitioner alleges that he was detained without explanation and was not given an opportunity to respond to the grounds for his detention.  [*Id.*].  Nearly two months later, on October 15, 2025, ICE issued a notice stating that

Petitioner would be afforded an informal interview regarding the revocation of his release, but Petitioner contends that no such interview occurred.  [*Id.*].  On October 30, 2025, ICE informed Petitioner that he had been classified as a "danger to the community" and a "flight risk," but Petitioner asserts that he was not provided the evidence supporting those determinations and has not been informed of any violation of his Order of Supervision.  [*Id.*].

Petitioner filed the present habeas petition on September 3, 2025, and the Court granted his request for an expedited decision on January 20, 2026.  [*Id.* at 8].  Petitioner, who is 62 years old, asserts that his health has deteriorated during his detention at the Adelanto Detention Facility, including complications from diabetes that have left him largely immobile.  [*Id.*].  Petitioner further contends that removal to Iran is not reasonably foreseeable because Iran historically refuses to accept deportees from the United States.  [*Id.* at 10].

## II.    LEGAL STANDARD

To justify ex parte relief, the moving party must make two showings: (1) "the evidence must show that the moving party's cause will be irreparably prejudiced if the underlying motion is heard according to regular noticed motion procedures"; and (2) "it must be established that the moving party is without fault in creating the crisis that requires ex parte relief, or that the crisis occurred as a result of excusable neglect."  *Mission Power Eng'g Co. v. Cont'l Cas. Co.*, 883 F. Supp. 488, 492 (C.D. Cal. 1995).

For the Court to grant an application for a TRO, the moving party must show: (1) that he is "likely to succeed on the merits" of his underlying claim, (2) that he is "likely to suffer irreparable harm in the absence of preliminary relief," (3) that "the balance of equities tips in his favor," and (4) that the requested injunction "is in the public interest."  *Winter v. Nat. Res. Def. Council*, 555 U.S. 7, 20 (2008).  The standard for issuing a temporary restraining order is identical to the standard for issuing a preliminary injunction.  *See Lockheed Missile & Space Co., Inc. v. Hughes Aircraft Co.*, 887 F. Supp. 1320, 1323 (N.D. Cal. 1995).

The Ninth Circuit uses a sliding scale approach to preliminary injunctions, such that "a stronger showing of one element may offset a weaker showing of another."  *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1131 (9th Cir. 2011); *see also Pimentel v. Dreyfus*, 670 F.3d 1096, 1105 (9th Cir. 2012).  Under the sliding scale approach, a petitioner is entitled to a TRO if he has raised "serious questions going to the merits . . . and the balance of hardships tips sharply in [his]

favor." *All. for the Wild Rockies*, 632 F.3d at 1131 (quoting *Clear Channel Outdoor, Inc. v. City of Los Angeles*, 340 F.3d 810, 813 (9th Cir. 2003)).

## III.   DISCUSSION

First, the Court finds that Petitioner has made a sufficient showing of likelihood of success on the merits.  Once he was released and allowed to be at liberty, he retained a "protected liberty interest in remaining out of custody." *Pinchi v. Noem*, 792 F.Supp.3d 1025, 1032 (N.D. Cal. July 24, 2025) (collecting cases); *see also Trump v. J. G. G.*, 604 U.S. 670, 673 (2025) (noncitizens protected by Due Process Clause).  "[T]he government's decision to release an individual from custody creates an implicit promise, upon which that individual may rely, that their liberty will be revoked only if they fail to live up to the conditions of release." *Pinchi*, 792 F. Supp. 3d at 1032 (citation modified).  "[I]t is clear that there is a significant risk that the government will erroneously deprive [Petitioner] of that liberty interest if it does not provide [him] with a pre-detention hearing," as such a hearing provides a crucial "opportunity to determine whether there is any valid basis for [his] detention." *Id.* at 1035.  There is no indication in the record that such a hearing took place, nor has Petitioner posed a flight risk through noncompliance of release conditions.

As many other courts have recognized, there is no meaningful countervailing government interest that supports detaining previously released noncitizens like Petitioner without a pre-detention hearing.  *Fernández López v. Wofford*, No. 25-CV-01226-KES-SKO, 2025 WL 2959319, at *6 (E.D. Cal. Oct. 17, 2025) ("In immigration court, custody hearings are routine and impose a minimal cost. If the government wishes to re-arrest petitioner at any point, it has the power to take steps toward doing so; but its interest in doing so without a hearing is low." (citation modified)).  Therefore, there is sufficient showing of likelihood that Petitioner's due process rights were violated.

Next, Petitioner currently suffers irreparable harm because Petitioner has likely been detained in violation of his constitutional rights.  "It is well established that the deprivation of constitutional rights 'unquestionably constitutes irreparable injury.'" *Hernandez v. Sessions*, 872 F.3d 976, 994 (9th Cir. 2017) (quoting *Melendres v. Arpaio*, 695 F.3d 990, 1002 (9th Cir. 2012)).  Petitioner also informed the Court that his health has significantly deteriorated during his nearly seven months of detention at Adelanto, including a serious diabetic foot ulcer, of which the facility has been unable to provide necessary orthopedic footwear.  [Dkt. No. 10, "Status Update"].  This factor thus favors Petitioner.

CIVIL MINUTES—GENERAL   Initials of Deputy Clerk iv

Finally, the balance of the hardships and public interest factors tip strongly in Petitioner's favor because he will suffer great hardship if this Court were to deny temporary injunctive relief. *See Alliance for Wild Rockies v. Cottrell*, 632 F.3d 1127, 1134–35 (9th Cir. 2011) (requiring the balance of hardships to "tip sharply" in the moving party's favor). In the absence of an injunction, Petitioner is experiencing and will continue to experience detention that resulted from a deprivation of his due process rights, and "the public has a strong interest in upholding procedural protections against unlawful detention." *Vargas v. Jennings*, No. 20-CV-5785-PJH, 2020 WL 5074312, at *4 (N.D. Cal. Aug. 23, 2020). The government "cannot reasonably assert that it is harmed in any legally cognizable sense by being enjoined from constitutional violations." *Zepeda v. U.S. Immigr. & Nat. Serv.*, 753 F.2d 719, 727 (9th Cir. 1983).

## IV.    CONCLUSION

In light of Respondent's non-opposition and the reasons described above, the Court **GRANTS** Petitioner's Application for a TRO. [Dkt. No. 11]. The Court **ORDERS** Respondents to immediately release Petitioner from their custody.

Respondents are **ENJOINED AND RESTRAINED** from again detaining Petitioner without notice and a pre-detention hearing where the government bears the burden of proving, by clear and convincing evidence, that the circumstances have changed as to his danger to the community or a flight risk, and that no conditions other than his detention would be sufficient to prevent those harms. *Pinchi*, 792 F. Supp. 3d at 1037–38. Respondents shall not impose any release restrictions on Petitioner, such as electronic monitoring, unless deemed necessary at a future pre-deprivation bond hearing.

Respondents are **ORDERED** to file a status report certifying compliance with the above order of release within three (3) days from the date of this Order. In light of this Order, Petitioner need not file a Reply to Respondents' Response. The Court directs the parties to present all subsequent matters in this case to the Magistrate Judge.

**IT IS SO ORDERED.**